Filed 9/14/22  P. v. Shivalila CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> ITURI SHIVALILA, <br><br>     Defendant and Appellant. | A164966 <br><br> (Mendocino County <br> Super. Ct. No. 21CR01660) |

Defendant Ituri Shivalila appeals from a judgment entered after he pled no contest to assault likely to cause great bodily injury and admitted the allegation of great bodily injury.  Defendant's court-appointed counsel has filed a brief asking this court for an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436.  Defendant was informed of his right to file supplemental briefing and has not filed such a brief.  We have reviewed counsel's brief and independently reviewed the record, and we find no errors or other issues requiring further briefing.  Accordingly, we affirm.

On September 9, 2021, defendant was charged by information with assault by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4); count 1),[1] and first degree burglary (§ 459; count 2).  As to the

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

assault count, the information alleged the special allegation that defendant inflicted great bodily injury upon a person not an accomplice to the offense (§ 12022.7, subd. (a)), and as to the burglary count, that another person was present during the burglary, making it a violent felony within the meaning of section 667.5, subdivision (c)(21).

As part of a negotiated disposition, on January 21, 2022, defendant pled no contest to the assault likely to cause great bodily injury count and the special allegation (count 1), with an indicated sentence of probation with no more than one year in county jail. In exchange, the district attorney dismissed the remainder of the information pursuant to plea, as well as two other cases against defendant.[2]

According to the preliminary hearing transcript, the incident giving rise to the current charges began early in the morning on August 16, 2021, in Willits. Officer Natalie Higley of the Willits Police Department responded to a trailer park at about 6:20 a.m. that day, where she spoke to Mr. Kester, who lived in trailer 7. Kester told her he saw light outside his trailer and heard an unusual rustling and banging noise coming from inside trailer 6, the trailer next door to his. Kester went to trailer 6 and saw a person wearing a dark hat and clothing leave the trailer. Kester had seen this person around the trailer park the day before. ~(7 RT 69)~ Kester then saw Mr. Boles, who lived in trailer 6, and called 911. ~(RT 69)~

---

[2] The two other cases were case No. 21CR01661, a three-count misdemeanor complaint filed on or about August 15, 2021, alleging elder abuse, vandalism, and resisting a police officer, all misdemeanors; and case No. 21CR02370, filed on or about August 18, 2021, alleging four counts of battery and four counts of battery by gassing, all misdemeanors, occurring in the jail. As to the elder abuse case, defendant entered a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754), for purposes of an order to stay away from the person involved in that case.

While Officer Higley was talking to Kester, Boles interrupted their conversation by yelling out "Ituri." Boles appeared, holding a paper towel on his face and bleeding. He had a gash above both eyes and on his nose. Boles was certain that "Ituri" had caused his injuries. Boles was distraught; he thought defendant was his friend. An ambulance was called for Boles.

A few minutes later, defendant was detained by Sergeant Ricco McCoy and Officer Damian Angell, also of the Willits Police Department. (Both of them also testified at the preliminary hearing.) Officer Higley arrived shortly after defendant had been detained. Higley could see what looked like droplets of blood on defendant's pants and on his thumbnail. Defendant was wearing dark clothing similar to Kester's description.

Later that day, Boles was able to provide Higley more details. (At this point, Boles was back at the trailer park, with stitches above both eyes, and his right eye socket was swollen and black and blue.) Boles said he was in his bed sleeping or resting when defendant came into his trailer without permission, and then started yelling at him and hitting him. Defendant said something like "you're messing with my girlfriend or my wife and I'm going to kill you." Boles recalled being hit and losing consciousness, and then woke up with blood on his face and injuries. He discovered that his two cell phones were missing.

Officer Angell testified that when he was pursuing defendant by foot just before defendant was detained, defendant was wearing dark clothes and a camo backpack. Angell was familiar with defendant from multiple previous encounters. At some point as Angell was pursuing him between buildings, defendant dropped his backpack and Angell stepped over it. Sergeant McCoy subsequently retrieved the backpack and found two cell phones inside that

3

matched Boles's description of his missing property. Boles later confirmed that the phones belonged to him.

Defendant completed a change of plea form that advised him of his rights and the rights he was waiving; the forms were signed by his counsel and by the court. Defense counsel stipulated to a factual basis for the no contest plea to count 1 and the special allegation based upon the preliminary hearing transcript. The court reviewed the change of plea form, questioned defendant, and found defendant knowingly, voluntarily, and intelligently waived his rights and entered a plea of no contest.

At the change of plea hearing, the court also noted that given defendant's admission of the great bodily injury allegation, he would ordinarily be ineligible for probation unless the court found unusual circumstances that would warrant it in the interest of justice. Noting that the district attorney was willing to agree to a grant of probation, the court found unusual circumstances that warranted it here. The court stated that it had heard the preliminary hearing in this matter as well as the opposed motion for mental health diversion under section 1001.36, which the court had denied after an evidentiary hearing. A factor that "weigh[ed] heavily" in the court's decision to consider probation was defendant's mental health diagnosis, the fact that he had now resumed taking medicine, the attitude that he expressed toward medication and ongoing treatment, and his desire to follow though with a treatment plan.

At the sentencing on February 16, 2022, the court stated that it had read and considered the presentence investigation report. The court noted that defendant had no prior felony record, and reiterated its reasons for having defendant supervised in the community on probation rather than in state prison.

4

Consistent with the anticipated disposition, imposition of sentence was suspended, and the trial court placed defendant on supervised probation for a period of three years with conditions including that he serve 185 days in the county jail, with 185 days credit for time served. Among other conditions, the court ordered defendant to have no contact with Boles or one of the alleged victims in the dismissed case No. 21CR01661, and to be evaluated by a licensed therapist or mental health department and follow through with a recommended course of treatment. The court reserved the issue of victim restitution to Boles.

After stating all of the terms and conditions of probation, the trial judge asked defendant whether he accepted them, and he said yes. Defendant also signed the Order of Probation indicating his understanding of the terms of his probation and agreeing to abide by them. The court clarified that probation was for a three-year term because defendant pled to a strike offense, but confirmed to defendant in response to his question that if he is "doing great" she would consider modifying his probation to a shorter term in the interest of justice.

## DISCUSSION

We have reviewed the record on appeal for any arguable issues.

Defendant was sentenced after a no contest plea and did not obtain a certificate of probable cause. Any issues as to the validity of his plea are not before us. (§ 1237.5.) Before entering his no contest plea, defendant was advised of his rights, and there is no indication he did not understand his rights, including the rights he was waiving. The court found defendant had knowingly, voluntarily, and intelligently waived his rights and his plea was voluntary. Counsel stipulated to the factual basis for the plea based upon the preliminary hearing transcript.

5

The sentence imposed is authorized by law and was in compliance with the plea agreement. Custody credits appear to have been calculated correctly.

Based on our review of the record, defendant was represented by competent counsel who acted to protect his rights and interests.

We conclude there are no arguable issues within the meaning of *People v. Wende, supra*, 25 Cal.3d 436.

The judgment is affirmed.

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Stewart, J.


A164966, *People v. Shivalila*

7